[Docket No. 17]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

JEFFERY JOYNES,

        Plaintiff,

   v.

MONTY WILKINSON,
ALEJANDRO MAYORKAS, and
TRACY RENAUD,

        Defendants.

Civil No. 21-11501 (RMB/AMD)

**OPINION**

**APPEARANCES**
Caitlin J. Costello
Palladino, Isbell, and Casazza
1528 Walnut Street
Suite 1701
Philadelphia, Pennsylvania 19102

    *On behalf of Plaintiff*

Enes Hajdarpasic
United States Attorney's Office, District of New Jersey
970 Broad Street
Newark, New Jersey 07102

    *On behalf of Defendants*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon the Motion to Dismiss filed by

Defendants Monty Wilkinson, the former Acting Attorney General of the United

States; Alejandro Mayorkas, the Secretary of Homeland Security; and Tracy

Renaud, the Acting Director of the United States Citizenship and Immigration Services (collectively, "Defendants"). [Docket No. 17.] For the reasons expressed herein, the Court will grant Defendants' Motion.

## I.    BACKGROUND

The Immigration and Nationality Act ("INA") permits a United States citizen to file a Form I-130 Petition for Alien Relative ("Form I-130") with the United States Citizenship and Immigration Services ("USCIS") "to classify the citizen petitioner's noncitizen spouse or child as an immediate relative for the purpose of allowing the beneficiary to immigrate to the United States." [Docket No. 17-1, at 3 (first citing 8 U.S.C. § 1154(a)(1)(A)(i); and then citing 8 C.F.R. §§ 204.1(a)(1), 204.2(a)(1)).] In certain circumstances, which exist in this case, a Form I-485 Application to Register Permanent Residence or Adjust Status ("Form I-485") and a Form I-130 may be filed concurrently—by a noncitizen and the noncitizen's eligible relative (including their spouse), respectively—to adjust the status of the noncitizen beneficiary to that of a lawful permanent resident of the United States. *See* 8 C.F.R. § 245.2(a)(2)(B). Upon receipt of both of those Forms, USCIS may adjust the noncitizen's status to a lawful permanent resident concurrently with approving the Form I-130 petition, as long as the noncitizen beneficiary is otherwise eligible. *See* 8 U.S.C. § 1255(a); 8 C.F.R. § 245.1(a); *Matter of Hashmi*, 24 I. & N. Dec. 785, 789 (BIA 2009).

However, under the Adam Walsh Child Protection and Safety Act of 2006 (the "AWA"), USCIS cannot grant a U.S. citizen's Form I-130 petition if the "citizen . . . has been convicted of a specified offense against a minor, **unless** the

Secretary of Homeland Security, in the Secretary's **sole and unreviewable discretion**, determines that the citizen poses no risk to the" noncitizen beneficiary. 8 U.S.C. § 1154(a)(1)(A)(viii)(I), (B)(i)(I) (emphasis added). The term "specified offense against a minor" is defined in part as "an offense against a minor that involves . . . [c]riminal sexual conduct involving a minor" or "[a]ny conduct that by its nature is a sex offense against a minor." 34 U.S.C. § 20911(7)(H), (I) (emphasis added). A "minor" is a person younger than eighteen years old. *Id.* § 20911(14). Finally, USCIS has interpreted the relevant statutory language to require "a petitioner who has been convicted of a specified offense against a minor [to] submit evidence of rehabilitation and any other relevant evidence that clearly demonstrates, **beyond any reasonable doubt**, that he or she poses no risk to the safety and well-being of his or her intended beneficiary(ies)." Interoffice Memorandum from Michael Aytes, Associate Director, Domestic Operations, USCIS, to Regional Directors; District Directors, including Overseas District Directors; Service Center Directors; National Benefits Center Director; and Associate Director of National Security and Records Verification, at (Feb. 8, 2007) (available at https://www.uscis.gov/sites/default/files/document/memos/adam walshact020807.pdf) (emphasis added).

In this case, Plaintiff is Jeffery Joynes, a 63-year-old United States citizen who lives with his wife Margot Joynes, a 52-year-old Mexican citizen, in Easthampton, New Jersey. [Docket No. 1, ¶ 1.] They were married on October 11, 2016. [*Id.* ¶ 6.] On September 10, 2018, Plaintiff filed a Form I-130 Petition "seeking to classify his

wife as his immediate relative" for immigration purposes. [*Id.* ¶¶ 2, 7.] However, Plaintiff was convicted of Aggravated Sexual Assault of a child "under the age of 13" in 1989. [*Id.* ¶ 5.] It is undisputed that this offense constitutes a "specified offense against a minor" under the AWA. Consequently, on October 31, 2018, USCIS issued a Request for Evidence (the "RFE") and a Notice of Intent to Deny (the "NOID"), by which it sought evidence from Plaintiff that established, "beyond any reasonable doubt, [that Plaintiff] poses no risk to [Margot's] safety and well-being." [*Id.* ¶ 9.] Plaintiff responded to the RFE and NOID on January 29, 2019. [*Id.* ¶ 10; *see* Docket No. 1-2, at 3 (PDF pagination) (listing the evidence Plaintiff submitted).] On January 11, 2021, USCIS denied the Form I-130 Petition, determining that Plaintiff "failed to demonstrate he poses no risk to" Margot. [Docket No. 1, ¶ 11 (quoting Docket No. 1-2, at 6 (PDF pagination).] It is undisputed that USCIS's determination is not reviewable. *See* 8 U.S.C. §§ 1154(a)(1)(A)(viii)(I), 1252(a)(2)(B)(ii).[1]

On May 19, 2021, Plaintiff filed the Complaint in this matter. [Docket No. 1.] He alleges (1) that "8 U.S.C. § 1154(a)(1)(A)(viii)(I) violates the Equal Protection Clause of the Fourteenth Amendment because it is not rationally related to a legitimate governmental purpose."[2] [*Id.* ¶¶ 18–32 (cleaned up).] In accordance with

---

[1] Because Plaintiff is not—and could not—challenging USCIS's determination, [*see* Docket No. 19, at 3], the Court does not consider the evidence Plaintiff submitted to USCIS or the details of USCIS's determination.

[2] Count II of the Complaint alleged that "8 U.S.C. § 1154(a)(1)(A)(viii)(I) violates the Due Process Clause of the Fourteenth Amendment because it is void for vagueness." [Docket No. 1, ¶¶ 33–38.] However, Plaintiff agreed to dismiss that claim in his

this Court's Individual Rules and Procedures, Defendants filed a pre-motion letter regarding a motion to dismiss on September 7, 2021. [Docket No. 12.] Plaintiff timely responded on September 10, 2021. [Docket No. 13.] After the Court determined that a pre-motion conference was not necessary, Defendants filed their Motion to Dismiss on November 8, 2021. [Docket No. 17.] Plaintiff responded on December 6, 2021. [Docket No. 19.] Finally, Defendants replied on December 23, 2021. [Docket No. 23.]

## II.    JURISDICTION

The Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claim raises constitutional questions about a federal law.[3]

## III.    LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir.

---

response to Defendants' Motion to Dismiss. [Docket No. 19, at 2.] Therefore, the Court will dismiss Count II of the Complaint.

[3] The Court notes that Plaintiff's Complaint erroneously brings claims under the Fourteenth Amendment, which is only applicable to state defendants and not the federal government. However, the Court construes Plaintiff's claim as being made under the equal protection component of the Fifth Amendment, which does apply to the federal government. *See, e.g.*, *Patel v. Cuccinelli*, Case No. 17-860, 2019 U.S. Dist. LEXIS 129779, at *2 n.2 (N.D. Cal. Aug. 2, 2019) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)).

2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

## IV.   ANALYSIS

Defendants argue, among other things, that Plaintiff's Complaint fails to state a claim upon which relief can be granted.[4] [Docket No. 17-1, at 9–14.] Plaintiff's Complaint asserts that "8 U.S.C. § 1154(a)(1)(A)(viii)(I) violates the Equal Protection Clause of the Fourteenth Amendment because it is not rationally related to a legitimate governmental purpose." [Docket No. 1, ¶¶ 18–32 (cleaned up).] As

---

[4] Defendants also argue (1) that "Plaintiff's claim fails because a Fourteenth Amendment claim against the federal government is not cognizable," (2) that the Court lacks subject matter jurisdiction because USCIS's determination is not reviewable, and (3) that Count II is without merit. [Docket No. 17-1, at 7–9, 14–17.] As noted above, Plaintiff does not seek review of USCIS's determination and has conceded that Count II should be dismissed. [Docket No. 19, at 2–3.] Moreover, because the Court dismisses Count I on the merits, it need not address the Fourteenth Amendment issue.

noted above, the Court construes Plaintiff's claim as arising under the Fifth Amendment.

### A.    Rational-Basis Review

The Third Circuit has held that, although the Fifth Amendment does not explicitly allude to "equal protection," it "contains an implicit equal protection component that prohibits the federal government from discriminating between individuals or groups." *United States v. Frame*, 885 F.2d 1119, 1137 (3d Cir. 1989) (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)). "Unless the statute creates a suspect classification or impinges upon a constitutionally protected right, however, it need only be shown that the differential treatment bears 'some rational relationship to a legitimate state purpose.'" *Id.* (quoting *City of Dallas v. Stanglin*, 490 U.S. 19, 23 (1989). "Rational-basis scrutiny is 'the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause.'" *Id.* (citing *Stanglin*, 490 U.S. at 23). In applying it, courts presume that "legislatures . . . have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v. Maryland*, 366 U.S. 420, 425–26 (1961).

The Court emphasizes first how deferential rational-basis review is: a statute will be upheld under this review as long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Moreover,

> the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered

> to be true by the governmental decisionmaker, and the relationship of
> the classification to its goal is not so attenuated as to render the
> distinction arbitrary or irrational.

*Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (citations omitted). But "a legislature that

creates these categories need not 'actually articulate at any time the purpose or

rationale supporting its classification.'" *Heller v. Doe*, 509 U.S. 312, 320 (quoting

*Nordlinger*, 505 U.S. at 15).

In terms of the parties' burdens regarding rational-basis review, the

government "has no obligation to produce evidence to sustain the rationality of a

statutory classification." *Id.* Rather, "'the burden is on the one attacking the

legislative arrangement to negative every conceivable basis which might support it,'

whether or not the basis has a foundation in the record." *Id.* (citation omitted)

(quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973). And a

court may not "subject" a statute "to courtroom factfinding"; rather, the statute

"may be based on rational speculation unsupported by evidence or empirical data."

*Id.* at 320–21 (citing *Beach Commc'ns*, 508 U.S. at 315).

To summarize,

> courts are compelled under rational-basis review to accept a legislature's
> generalizations even when there is an imperfect fit between means and
> ends. A classification does not fail rational-basis review because it "is
> not made with mathematical nicety or because in practice it results in
> some inequality." "The problems of government are practical ones and
> may justify, if they do not require, rough accommodations—illogical, it
> may be, and unscientific."

*Id.* at 321 (citations omitted) (first quoting *Dandridge v. Williams*, 397 U.S. 471, 485

(1970); and then quoting *Metropolis Theatre Co. v. Chicago*, 228 U.S. 61, 69–70 (1913)).

## B.    Applying Rational-Basis Review to the AWA

Here, the parties agree that the Court must apply rational-basis review. [*See* Docket No. 1, ¶ 30 (Plaintiff's Complaint alluding to rational-basis review); Docket No. 17-1, at 9–14 (Defendant's Motion to Dismiss); Docket No. 19, at 5–6 (Plaintiff's response in opposition).] The question, then, is whether the AWA's "legislative arrangement" is, in any conceivable way, rationally related to a legitimate government interest.

The first issue that the Court will resolve is how to define the legitimate government interest that is arguably furthered by the AWA. The AWA described itself as "an act to protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, 120 Stat. 587, 587 (2006). Moreover, the Third Circuit has stated that the portion of the AWA that amended the INA—the pertinent portion in this case—"is intended to effectuate the AWA's stated purposes: '[t]o protect children from sexual exploitation and violent crime, [and] to prevent child abuse and child pornography.'" *Bakran v. U.S. Dep't of Homeland Sec.*, 894 F.3d 557, 559 (3d Cir. 2018) (quoting AWA, 120 Stat. at 587).

Plaintiff argues, based on the language of the Act, that the AWA was *strictly* enacted to protect children, and not the public at large. [Docket No. 19, at 5.] However, the Court disagrees with this overly restrictive purported purpose. For instance, Title I of the AWA—the Sex Offender Registration and Notification Act—

10

has as one of its express purposes "to protect the public from sex offenders and offenders against children." AWA, 120 Stat. at 590, § 102. Additionally, other courts have held, for instance, that, in the context of its immigration restrictions, "the AWA is broadly aimed at protecting the public from those convicted of sex offenses and other offenses against children." *Solorio v. Lynch*, 194 F. Supp. 3d 1038, 1044–45 (E.D. Cal. 2016), *aff'd sub nom. Solorio v. Sessions*, 712 F. App'x 663 (9th Cir. 2018). Another court held that "the AWA's immigration provision is reasonably related to a legitimate governmental objective, namely the prevention of harm to potential immigration beneficiaries by convicted sex offenders." *Parella v. Johnson*, No. 15-863, 2016 U.S. Dist. LEXIS 82762, at *33 (N.D.N.Y. June 27, 2016). Similarly, a court has held that the AWA does not solely have the purpose "to protect minors, but to 'protect the public from sex offenders and offenders against children.'" *Patel v. Cuccinelli*, No. 17-860, 2019 U.S. Dist. LEXIS 129779, at *12 (N.D. Cal. Aug. 2, 2019) (quoting 34 U.S.C. § 20901).

This Court agrees that the AWA's purpose is not limited in the manner Plaintiff argues. Rather, it has the broad purpose of protecting the public in general—as opposed to only children—from sex offenders and offenders against children. This is indisputably a legitimate governmental interest.

The next issue to resolve, then, is whether the AWA's terms are rationally related to the goal of protecting the public from sex offenders and offenders against children. As the *Solorio* Court expressed,

> There are several conceivable bases for such a legislative distinction. . . . [T]he AWA is broadly aimed at protecting the public from those convicted of sex offenses and other offenses against children. Through the AWA, Congress conceivably intended to treat convicted sex offenders differently by presumptively denying them the right to petition for sponsorship of a family member. Congress could have determined that because convicted sex offenders are more likely to pose a risk of harm to the public generally, including family members, those individuals should be required to make an affirmative showing that they no longer pose such a risk to intended beneficiaries before regaining the right to petition for a family-sponsored visa. Moreover, such additional scrutiny may reflect congressional intent to provide incentives for those convicted to engage in the rehabilitative process. Alternatively, the potential denial of a right to petition for family-based immigration may have been intended to deter future criminal conduct.

*Solorio*, 194 F. Supp. 3d at 1044–45. The above list, while not exhaustive, contains conceivable bases for the AWA's classifications.

Plaintiff's burden is "to negative every conceivable basis which might support" the AWA's classification scheme. *See Lehnhausen*, 410 U.S. at 364. Plaintiff fails to meet that burden here, instead broadly asserting that "the AWA serves no purpose whatsoever" given the facts of this case, other than "to keep [the noncitizen] in an undocumented and disenfranchised state." [Docket No. 30, at 5.] The Court disagrees. Plaintiff's other broad statements that fail to adequately negative the various conceivable bases outlined above fare no better. [*See id.* at 6–8.]

Therefore, the Court concludes that the relevant portions of the AWA are rationally related to a legitimate governmental purpose. Plaintiff's constitutional challenge fails as a result.

## V.    CONCLUSION

For the reasons stated herein, the Court will grant Defendants' Motion to

Dismiss. An accompanying Order will issue.


August 4, 2022                              s/Renée Marie Bumb
Date                                       Renée Marie Bumb
                                           United States District Judge